IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARTIN RUSSELL DIAMOND,          )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:22cv287
                                 )
ODEDERE, et al.,                 )
                                 )
                Defendants.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States
Magistrate Judge for a recommended ruling on the Motion for Summary
Judgment (Docket Entry 29) filed by Defendants Jennifer Crisco,
Jacob Parker, and Tyler Euote (collectively, "Moving Defendants").
(See Docket Entry dated Aug. 14, 2023.) The Court should grant in
part and should deny in part the instant Motion.

## INTRODUCTION

Plaintiff (a state prisoner) commenced this action under 42
U.S.C. § 1983 against Moving Defendants (three state prison
officials), as well as Defendant Odetayo Odedere (a fourth state
prison official), by filing a Complaint for Violation of Civil
Rights (see Docket Entry 1 (the "Complaint") at 1-3), asserting
these seven claims:

1) "Defendant Parker['s] use of pepper spray was an excessive,
disproportionate use of force" (id. at 21; see also id. ("Defendant
Parker's use of force . . . constituted cruel and unusual

punishment under the Eighth Amendment to the United States Constitution.”));[1]

2) “Defendant Euote failed to intervene during Defendant Parker’s excessive use of force” (id. at 22; see also id. (asserting that said failure to intervene “constituted cruel and unusual punishment under the Eighth Amendment”));

3) “Defendant Euote[’s] usage of the food trap to smash [] Plaintiff’s hands was an excessive use of force” (id.; see also id. at 22-23 (asserting that said use of force “constituted cruel and unusual punishment under the Eighth Amendment”));

4) “Defendant Euote failed to intervene during Defendant Odedere’s baton strikes against [] Plaintiff” (id. at 23; see also id. (asserting that said failure to intervene “constituted cruel and unusual punishment under the Eighth Amendment”));

5) “Defendant Odedere’s first pepper spray use was an excessive, disproportionate use of force” (id.; see also id. at 24 (“[That] use of force . . . constituted cruel and unusual punishment under the Eighth Amendment . . . .”));

6) “Defendant Odedere’s baton strikes was [sic] an excessive, disproportionate use of force” (id. at 24; see also id. at 25

_____

[1] Pin cites to the Complaint refer to the page numbers that appear in the footer appended to the Complaint upon its docketing in the CM/ECF system (not to any original pagination). This Memorandum Opinion also applies standard capitalization conventions in quoting Plaintiff’s filings.

("That force of an excessive nature . . . constituted cruel and unusual punishment under the Eighth Amendment . . . .")); and

7) "Defendant Crisco failed to intervene during Defendant Odedere's baton strikes against [] Plaintiff" (id. at 25; see also id. (asserting that said failure to intervene "constituted cruel and unusual punishment under the Eighth Amendment")).

The case proceeded to discovery. (See Text Order dated Sept. 20, 2022 (setting discovery deadline of May 17, 2023).) After the close of discovery, Moving Defendants timely filed the instant Motion (see Docket Entry 29), along with a supporting memorandum (see Docket Entry 30) and attachments thereto which included declarations under penalty of perjury from Moving Defendants (with attachments) (see Docket Entry 30-4 (Defendant Parker's declaration); Docket Entry 30-5 (Defendant Euote's declaration); Docket Entry 30-6 (Defendant Crisco's declaration)). Plaintiff timely responded (see Docket Entry 33 (the "Response"); see also Text Order dated July 31, 2023 ("deeming [Response] timely filed")), and Moving Defendants did not file a reply (see Docket Entries dated July 28, 2023, to present).

<u>DISCUSSION</u>

Via the instant Motion, Moving Defendants have "move[d] for summary judgment as to all claims against them." (Docket Entry 29 at 1.) "The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

3

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering summary judgment, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). Put another way, the nonmoving "party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal brackets and quotation marks omitted). If, applying that standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

In their supporting memorandum, Moving Defendants first argued that "[s]ummary judgment should be granted in favor of Defendants Parker and Euote as Plaintiff has failed to produce any material fact to support that Defendants Parker and Euote used excessive

4

force." (Docket Entry 30 at 7 (underscoring omitted).) With that argument, Moving Defendants offered this analysis of the record:

> The credible evidence before this Court is that Plaintiff refused to obey several direct orders from both Defendants Parker and Euote to remove his arms from the food [tray] passage port and close the port. Because of Plaintiff's refusals, Defendant Parker administered OC pepper spray to gain compliance, as per policy. Notably, Plaintiff still did not comply with Defendant Parker's direct orders. Once Defendant Euote arrived at Plaintiff's cell, he also gave Plaintiff several orders to close the food [tray] passage port. Again, Plaintiff continually refused, and Defendant Euote administered OC pepper spray according to policy. The investigation into these uses of force determined that the use of OC pepper spray was in accordance with policy. For the foregoing reasons, Plaintiff's excessive force claims against Defendants Parker and Euote necessarily fail.

(Id. at 9; see also Docket Entry 30-4 at 2-3 (setting out Defendant Parker's averments that, after Plaintiff rejected his food tray, (A) he "went on to say 'this [food tray] passage ain't closing, so you might as well feed everyone else,'" (B) Defendant Parker replied "that if [he] left the food [tray] passage open it is a security breach, and [he] can only open one [passage] at a time," (C) "Plaintiff then threw out his right arm to prevent the [passage] from being closed," (D) Defendant Parker "ordered Plaintiff to remove his arm," but "[he] refused," and (E) Defendant Parker "administered one 1-2 second burst of OC pepper spray").)[2]

---

2 Pin cites to Moving Defendants' declarations (and attachments thereto) refer to the page numbers that appear in the footers appended to those documents upon their docketing in the CM/ECF system (not to any original pagination).

As an initial matter, Moving Defendants' above-quoted analysis does <u>not</u> address Plaintiff's third claim (as listed in the Introduction) that "Defendant Euote['s] usage of the food [tray passage] trap [door] to smash [] Plaintiff's hands was an excessive use of force" (Docket Entry 1 at 22). To the extent the instant Motion impliedly requests summary judgment for Defendant Euote on that claim based on his averment in his declaration that, "[a]t no time did [he] slam Plaintiff's hand in the trap door" (Docket Entry 30-5 at 4), the Court should deny that request because (A) "a verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge," <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991) (emphasis omitted), (B) the Complaint states that, during their interaction, Defendant Euote "slam[med] the food [tray passage] trap [door] against [] Plaintiff's hands multiple times causing pain, suffering, physical injury and emotional distress" (Docket Entry 1 at 19), and (C) Plaintiff "certif[ied] under penalty of perjury that the foregoing [statement wa]s true and correct" (<u>id.</u> at 26). <u>See</u> <u>Raynor v. Pugh</u>, 817 F.3d 123, 130 (4th Cir. 2016) ("[W]here affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie." (internal quotation marks omitted)).[3]

---

3 Moving Defendants' supporting memorandum does not develop any argument that Plaintiff's conduct would have rendered lawful,
(continued...)

Next, in regard to the claim that "Defendant Parker['s] use of pepper spray was an excessive, disproportionate use of force" (Docket Entry 1 at 21),[4] Plaintiff has maintained that "a genuine issue of material fact exists" (Docket Entry 33 at 8). More particularly, per Plaintiff:

> Defendant [Parker] claims [his] use of force [was] applied in good-faith to accomplish a penological objective, [but] Plaintiff contends the use of force by Defendant Parker was applied maliciously as a punishment for "slowing him down". The use of force against a person by another person because they feel "slowed down" by that person is malicious and sadist [sic]. If the motivation behind the use of force is tainted, the use of force itself is malicious and malign [sic]. Force that

---

3(...continued)
under the Eighth Amendment, the use of the food tray passage trap door to smash his hands. (See Docket Entry 30 at 1-11.) "A party waives an argument by failing to present it in [the party's] opening brief or by failing to develop [the] argument . . . ." Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017) (internal quotation marks omitted). Similarly, Defendant Euote has invoked the qualified immunity doctrine, but only to the extent of arguing that "[q]ualified immunity shields [him because he] . . . did not violate any of Plaintiff's constitutional rights." (Docket Entry 30 at 11.) The existence of a material factual dispute about whether Defendant Euote's smashed Plaintiff's fingers thus precludes summary judgment on this claim based on qualified immunity. See, e.g., McNeill v. Britt, No. 1:18CV800, 2021 WL 3711702, at *15 (M.D.N.C. July 21, 2021) (unpublished) (Webster, M.J.) ("[T]here are genuine issues of material fact as to whether a constitutional violation occurred. Beyond that, the summary judgment brief fails to provide any basis for the Court to determine that these [d]efendants are entitled to qualified immunity . . . . Thus, they should not be entitled to qualified immunity at this juncture."), recommendation adopted, 2021 WL 11134242 (M.D.N.C. Aug. 19, 2021) (unpublished) (Biggs, J.).

4 As the quotations from the Complaint in the Introduction reflect, Plaintiff has not asserted a claim against Defendant Euote for administering pepper spray. (See Docket Entry 1 at 21-26 (including no such claim under heading "Legal Claims").)

> is malicious is force that is excessive. An excessive
> use of force against another is a "cruel and unusual"
> punishment. Protection from "cruel and unusual"
> punishment falls under the Eighth Amendment. . . .
> Therefore, there exists a genuine issue of material fact
> for resolution at trial.

(Id. at 8-9 (internal parenthetical and stray comma omitted).)

Pertinent to that line of argument, the Complaint contains these

statements, which Plaintiff "certif[ied] under penalty of perjury

. . . [a]s true and correct" (Docket Entry 1 at 26):

1) "Defendants [Parker and Euote] arrived at [Plaintiff's]

cell . . . and served the meal" (id. at 16);

2) "[a]t that time[, ] Plaintiff requested a bar of soap and

requested to speak with . . . Defendant Crisco, in regards to

receiving assistance in being issued a replacement ID card" (id.);

3) "Defendant Parker relayed [] Plaintiff's request via radio

to Defendant Crisco, who declined to be of aid" (id.);

4) "[Plaintiff] requested Defendant Parker contact the

Officer-in-Charge (also known as O.I.C. . . .) for aid" (id.);

5) "Defendant Parker responded 'close up food trap or get

pepper sprayed for slowing down feeding'" (id. at 17);

6) "Plaintiff repeated the request for O.I.C. assistance and

asked Defendant Parker 'you are going to spray me?'" (id.); and

7) "Defendant Parker responded 'yes' [and] then proceeded to

pepper spray [] Plaintiff's face causing pain, suffering, physical

injury and emotional distress" (id.).

8

Eighth Amendment claims of this sort require assessment of "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the [force used] . . . was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (internal quotation marks omitted); see also Dean v. Jones, 984 F.3d 295, 303 (4th Cir. 2021) ("Although [courts] once considered the severity of an inmate's *injuries* under the objective component, the Supreme Court has clarified that what matters is the severity of the *force* employed." (emphasis in original)). Moving Defendants do not dispute that the discharge of pepper spray into Plaintiff's face could satisfy the objective component (see Docket Entry 30 at 7-9); nor could they, see Dean, 984 F.3d at 303 ("So long as the force used is more than de minimis, the objective component is satisfied . . . . [A] reasonable jury could find that a sustained blast of pepper spray directly to the face constitutes something more than de minimis force."). As to the subjective component, Moving Defendants properly have observed that "[t]he 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (Docket Entry 30 at 8 (stray comma omitted) (quoting Whitley v. Albers, 475 U.S. 312, 319-20 (1986)).) "On summary judgment, then, the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer

9

acted with malice, applying force punitively and for the very purpose of causing harm." Dean, 984 F.3d at 302 (internal quotation marks omitted); see also Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (emphasizing that, for Eighth Amendment excessive force claims, "[i]n contrast to the objective component, this [subjective component] is a demanding standard").

"Because direct evidence of motive or intent may be hard to come by, the Supreme Court . . . [has] set out [these] four factors from which [courts] may infer the existence of the subjective state of mind required for an Eighth Amendment violation," Dean, 984 F.3d at 302 (internal brackets and quotation marks omitted): "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Iko, 535 F.3d at 239, in turn quoting Whitley, 475 U.S. at 321). Application of the record facts (taken in the light most favorable to Plaintiff) to these factors confirms Defendant Parker's entitlement to judgment as a matter of law on the excessive force claim brought against him.

Starting with "the need for the application of force," id. (internal quotation marks omitted), and the closely related issue of "the extent of any reasonably perceived threat that the application of force was intended to quell," id., the Court should

10

note first that "[c]orrections officers act in a good faith effort to maintain or restore discipline – that is, with a permissible motive – not only when they confront immediate risks to physical safety, but also <u>when they attempt to preserve internal order by compelling compliance with prison rules and procedures</u>." <u>Brooks</u>, 924 F.3d at 113 (emphasis added) (internal quotation marks omitted); <u>see also</u> <u>id.</u> at 117 (agreeing "that inmates cannot be permitted to decide which orders they will obey, and when they will obey them" (internal brackets and quotation marks omitted)). "And [courts] owe [corrections] officers wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security." <u>Id.</u> at 113 (internal quotation marks omitted).[5]

---

5 Consistent with that Fourth Circuit precedent recognizing both the right and the zone of discretion prison officials possess under the Eighth Amendment to use force to compel prisoners to comply with prison rules, the standard operating procedures for use of force in place at Plaintiff's prison at the time of his encounter with Defendant Parker (<u>see</u> Docket Entry 30-4 at 10-30) provided (A) that "[r]easonable force [wa]s authorized in order to . . . ensure compliance with the lawful order" (<u>id.</u> at 15), and (B) that "[a]n officer should attempt non-physical methods of offender control <u>but only to the extent reasonably possible under the circumstances as they appear to that officer</u>" (<u>id.</u> at 17 (emphasis added)). In his declaration, Defendant Parker verified his "familiar[ity] with [those] standard operating procedure[s] . . ., a true and accurate copy of which [he] . . . attached [t]hereto as [an e]xhibit [] and incorporated [t]herein by reference." (Docket Entry 30-4 at 2 (emphasis omitted).) Plaintiff's Response does not contest the authenticity or admissibility of those standard operating procedures (<u>see</u> Docket Entry 33 at 1-16) and his averments in the Complaint do not contradict the substance of those standard operating procedures (<u>see</u> Docket Entry 1 at 1-26).

Case 1:22-cv-00287-LCB-LPA  Document 39  Filed 01/22/24  Page 11 of 26

Here, Plaintiff's own account shows that Defendant Parker ordered Plaintiff to "'close up [his] food [tray passage] trap [door] or get pepper sprayed for slowing down feeding'" (Docket Entry 1 at 17), but that Plaintiff refused to comply with that order and instead "repeated [his] request for O.I.C. assistance" (id.). Only then – and after reaffirming an intent to pepper spray Plaintiff if he did not comply (see id.) – did Defendant Parker "proceed[] to pepper spray [] Plaintiff's face" (id.). Moreover, as documented in the Incident Report compiled by prison officials regarding the use(s) of force at issue in this case:

> [The prison's] Standard Operating Procedures state [that,] after an offender receives a food tray, the passage [trap] door will be closed while [the] offender eats. This is to provide safety by preventing offender[s] from attempting to pass objects to each other, [by] prevent[ing offenders from] throwing objects/ food/liquid at staff, and [by] prevent[ing] offender[s] from being able to grab a staff member.

(Docket Entry 30-4 at 37.)[6]  In other words (as summarized in the Incident Report), "[Plaintiff] refused a lawful order given by [Defendant] Parker."  (Id.; see also id. ("[Defendant] Parker

_____

6 Defendant Parker's declaration states under penalty of perjury that he appended thereto "[a] true and accurate copy of th[at I]ncident [R]eport . . . and incorporated [it t]herein by reference." (Docket Entry 30-4 at 3.)  Plaintiff's Response does not challenge the authenticity or admissibility of that Incident Report (see Docket Entry 33 at 1-16) and his averments in the Complaint do not contradict the Incident Report's recitation of the substance of (or rationale for) the standard operating procedures governing food tray passages (see Docket Entry 1 at 1-26).

instructed [Plaintiff] to remove his hand and allow the [food tray passage trap] door to be closed. [Plaintiff] refused.").)

Simply stated, "even under [Plaintiff's] version it cannot be disputed that [Defendant Parker] could use some degree of force to obtain compliance with a reasonable prison rule requiring [food] tray [passage trap] doors to be shut." Garris v. Gober, No. 1:10CV504, 2013 WL 4502261, at *4 (M.D.N.C. Aug. 22, 2013) (unpublished) (Eagles, J.), aff'd, 554 F. App'x 211 (4th Cir. 2014); see also id. (recognizing that "[the plaintiff's] refusal to move his arm out of the [food tray passage trap] door presented security and safety risks that justified [the defendant-prison official's] use of some degree of force"); Karavias v. Virginia, No. 7:12CV624, 2013 WL 3879701, at *3 (W.D. Va. July 26, 2013) (unpublished) ("[The p]laintiff's arms did not belong outside of his cell when returning the lunch tray, and his persistent refusal to comply with staff's orders required some type of force to restore discipline and order."). Indeed, "[t]he Fourth Circuit has recognized that '[such uses of] force are inherent in maintaining order and providing safety.' Case law and the relevant policies and procedures support that a prisoner's failure to comply with an officer's order permits the officer to use some measure of force to gain the prisoner's compliance . . . ." Geddings v. Roberts, No. 1:15CV264, 2018 WL 1626116, at *10 (M.D.N.C. Mar. 30, 2018) (unpublished) (Biggs, J.) (internal brackets, citation, and some

13

quotation marks omitted) (quoting <u>United States v. Gore</u>, 592 F.3d 489, 493 (4th Cir. 2010)).[7]

Turning to the remaining <u>Whitley</u> factors, i.e., "the relationship between the need and the amount of force that was used . . . and [] any efforts made to temper the severity of a forceful response," <u>Dean</u>, 984 F.3d at 302 (internal quotation marks omitted), the undisputed record establishes that – in his effort to gain Plaintiff's compliance with the prison's reasonable safety

---

7 Defendant Parker's purported linkage of his order to Plaintiff to "'close up [his] food [tray passage] trap [door]" (Docket Entry 1 at 17), with a warning that noncompliance would result in Plaintiff "'get[ting] pepper sprayed for slowing down feeding'" (<u>id.</u>), does not (as Plaintiff suggests) support a reasonable inference that Defendant Parker acted "malicious[ly] and sadist[ically]" (Docket Entry 33 at 8). To the contrary, "the Eighth Amendment imposes a duty on prison officials to provide inmates with adequate food." <u>Scinto v. Stansberry</u>, 841 F.3d 219, 233 (4th Cir. 2016) (internal quotation marks omitted). In fact, courts have described provision of "food," <u>Clemmons v. Bohannon</u>, 956 F.2d 1523, 1527 (10th Cir. 1992), as among the small handful of "core areas of any Eighth Amendment claim," <u>id.</u> (internal quotation marks omitted), and prisoners have not hesitated to sue prison officials over "long waits at meal times," <u>Lott v. Edenfield</u>, 542 F. App'x 311, 313 (5th Cir. 2013); <u>accord, e.g.</u>, <u>Warren v. Davis</u>, No. 7:19CV39, 2020 WL 3977143, at *1 (N.D. Tex. July 13, 2020) (unpublished), <u>appeal dismissed</u>, No. 20-10761, 2021 WL 3148983 (5th Cir. Mar. 11, 2021) (unpublished); <u>see also</u> <u>Vega v. Lantz</u>, No. 304CV1215, 2009 WL 3157586, at *6 (D. Conn. Sept. 25, 2009) (unpublished) (citing evidence that "delays in serving meals . . . could spark inmate unrest"). Given those considerations, evidence that Defendant Parker sought to enforce the prison's food tray passage closure rule not simply for the sake of enforcing a rule (which he lawfully could do), but also because he recognized the threat Plaintiff's ongoing violation of that rule posed to the fulfillment of prison officials' constitutionally mandated duty to provide food to other prisoners, underscores "the need for the application of force . . . [and] the extent of any reasonably perceived threat that the application of force was intended to quell," <u>Dean</u>, 984 F.3d at 302 (internal quotation marks omitted).

rule requiring closure of food tray passage trap doors – Defendant Parker only discharged a small amount of "pepper spray" (Docket Entry 1 at 17; see also Docket Entry 30-4 at 2-3 ("I administered one 1-2 second burst of OC pepper spray.")). Notably, the Fourth Circuit has held that a more potent aerosol, known as "tear gas or mace (a trade name for tear gas)," Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996), "can be constitutionally used in small quantities . . . to control a recalcitrant inmate," id. (internal quotation marks omitted), regardless of whether such inmates remain "confined in their cells," id. In so ruling, the Fourth Circuit explained that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Id. (internal quotation marks omitted). Accordingly, "a limited use of mace constitutes a relatively 'mild' response compared to other forms of force . . . [and] indicates a 'tempered' response by the prison officials." Id.; see also id. (holding that "analysis of the second and fourth *Whitley* factors also leads [] to conclu[sion] that the district court did not err in deciding, as a matter of law, that the initial application of mace did not constitute cruel and unusual punishment").

Defendant Parker's limited use of pepper spray to try to get Plaintiff to comply with a lawful order therefore constitutes an even milder use of force and an even more tempered response for purposes of the Whitley analysis. See Jackson v. Morgan, 19

15

F. App'x 97, 102 (4th Cir. 2001) ("[T]he chemical spray in *Williams* was CS tear gas . . . . Pepper spray is a milder irritant . . .; whereas CS tear gas . . . require[s] more thorough decontamination."). Aligned with that view, "[c]ourts have held that a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order." Starr v. Rivera, No. 2:10CV1236, 2011 WL 3841006, at *5 (D.S.C. Aug. 26, 2011) (unpublished); see also, e.g., Geddings, 2018 WL 1626116, at *11 (stating, in connection with consideration of "fourth *Whitley* factor (any effort to temper the force used)," that "[the d]efendant[-prison official] was authorized to use pepper spray on a non-compliant prisoner"); Mitchell v. Green, No. 1:15CV566, 2015 WL 4494252, at *3 (M.D.N.C. July 23, 2015) (unpublished) ("[I]nsubordination and refusals to follow direct orders constitute serious matters in a jail or prison, allowing the use of reasonable force such as pepper spray."), recommendation adopted, 2015 WL 6554000 (M.D.N.C. Oct. 29, 2015) (unpublished) (Schroeder, J.); Lomax v. Walker, Civ. No. 07-2878, 2009 WL 8636987, at *1 (D. Md. Jan. 22, 2009) (unpublished) ("[W]hen [the p]laintiff further refused to obey [the defendant-prison official's] direct order to remove his arm from the food slot, she applied two short bursts of pepper spray. The court again finds that this was a reasoned response to the situation . . . .").

16

"There is thus no factor in the Court's analysis of the subjective component [of this Eighth Amendment claim] that weighs in Plaintiff's favor." Geddings, 2018 WL 1626116, at *12. As a result, "the Court [should] conclude[ (A)] that no reasonable jury could find that Defendant [Parker] applied force maliciously and sadistically for the very purpose of causing harm, and [(B) that] Defendant [Parker], therefore, is entitled to judgment as a matter of law on [this] claim of excessive force." Id.

That determination leaves, as concerns Moving Defendants,[8] only Plaintiff's claims that "Defendant Euote failed to intervene during Defendant Parker's excessive use of force" (Docket Entry 1 at 22), that "Defendant Euote failed to intervene during Defendant Odedere's baton strikes against [] Plaintiff" (id. at 23), and that "Defendant Crisco failed to intervene during Defendant Odedere's baton strikes against [] Plaintiff" (id. at 25). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he [or she] (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002). For reasons previously discussed, Plaintiff has not come forward with evidence sufficient to support a determination by a

_____

8 The instant Motion does not address Plaintiff's two claims against Defendant Odedere. (See Docket Entry 29 at 1-2.)

17

reasonable fact-finder that Defendant Parker used excessive force against Plaintiff; thus, the claim against Defendant Euote for failure to intervene when Defendant Parker pepper sprayed Plaintiff likewise fails as a matter of law.  See, e.g., Harris v. Town of Southern Pines, No. 1:21CV955, 2023 WL 4316253, at *15 (M.D.N.C. June 3, 2023) (unpublished) (Osteen, J.) ("When there is no underlying constitutional violation, a plaintiff's claim for failure to intervene also fails.").

In seeking summary judgment on the last two failure-to-intervene claims, Moving Defendants have contended that Defendants Euote and Crisco possessed neither "an opportunity, nor the authority, to intervene when Defendant Odedere struck Plaintiff with the baton." (Docket Entry 30 at 10.)  Specifically, according to Moving Defendants, "[b]oth Defendants Euote and Crisco said the baton strikes happened very quickly.  Therefore, neither Defendants Euote nor Crisco had a reasonable opportunity to prevent any harm, nor did they have the time to choose not to act."  (Id.)

Plaintiff's Response counters that "Defendant Odedere had the time to aim and strike [] Plaintiff 39 times, over 45 seconds of use of continuous force[ and such a period of] time was ample for intervention." (Docket Entry 33 at 11; see also id. (pointing out that "[Moving] Defendants don't dispute they knew the rights of Plaintiff was [sic] being violated [by Defendant Odedere]").)  However, Plaintiff did not sign the Response under oath or penalty

18

of perjury (see id. at 16), and "unsworn argument does not constitute evidence," United States v. White, 366 F.3d 291, 300 (4th Cir. 2004); see also Maisha v. University of N.C., No. 1:12CV371, 2015 WL 277747, at *1 (M.D.N.C. Jan. 22, 2015) (unpublished) (Eagles, J.) (emphasizing that, at summary judgment, "[t]he Court [does] not consider[] 'facts' set forth in the briefs that are not supported by citations to admissible evidence").[9] The Court therefore must look to the (verified) declarations of Defendants Euote and Crisco in evaluating their contention that they neither "had a reasonable opportunity to prevent any harm, nor . . . ha[d] the time to choose not to act" (Docket Entry 30 at 10).

On that front, Defendant Euote's declaration states: "I do not know how many times Defendant Odedere struck Plaintiff. I had no time to intervene with the baton strikes, as Defendant Odedere had delivered the strikes in maybe 45 seconds." (Docket Entry 30-5 at 3-4 (emphasis added).) Defendant Crisco, in turn, included in

---

9 The Response refers to its above-quoted description of the extent of Defendant Odedere's baton strikes as "supported by video" (Docket Entry 33 at 11), but the record contains no video evidence (see Docket Entries dated Apr. 12, 2022, to present). In addition, although Plaintiff generally verified the truth of the Complaint's allegations under penalty of perjury, he excepted from that verification "matters alleged on information and belief" (Docket Entry 1 at 26), and the Complaint's allegation about the length and quantity of Defendant Odedere's baton strikes carries that caveat (see id. at 19 ("Upon information and belief Defendant Odedere's baton strikes lasted 50 seconds non-stop with approximately 40 strikes . . . .")). "[T]he opponent of a summary judgment motion . . . cannot simply rest upon his unverified complaint." Higgins v. Scherr, 837 F.2d 155, 156-57 (4th Cir. 1988).

19

her declaration no temporal or numerical accounting of Defendant Odedere's baton strikes. (See Docket Entry 30-6 at 2 ("Defendant Odedere then struck Plaintiff's arm with the baton in an overhead motion."), 3 ("The situation escalated so fast, I feared I would be struck with the baton myself if I intervened.").) But Defendant Crisco's declaration does state that "[a] true and accurate copy of the [I]ncident [R]eport is attached [t]hereto . . . and incorporated [t]herein by reference." (Id. at 3 (emphasis added).) And that Incident Report contains a hand-written statement Defendant Crisco gave six days after these events (see id. at 60-64), in which, inter alia, she wrote:

> [Defendant] Odedere was standing toward my right with the baton in his right hand[.] Once he started striking at [Plaintiff's] arm and hands in lower position strikes[,] the baton expanded and [Defendant] Euote step[ped] back out of the way of [Plaintiff]. [Defendant] Odedere gave [Plaintiff] another direct order to close his [food tray passage trap] door[. Plaintiff] did not comply. [Defendant] Odedere began striking [Plaintiff's] arms and hands with over the head strikes telling [Plaintiff] to close his [food tray passage trap] door. [Defendant] Odedere striked [sic] over 10 times at [Plaintiff's] arms and hands. [Plaintiff] kept telling [Defendant Odedere] to stop hitting [Plaintiff].

(Id. at 63 (emphasis added).)[10]

_____

10  That Incident Report also relays the investigating officer's comment that "[v]ideo shows [Defendant] Odedere use the baton a total of 39 times . . . ." (Docket Entry 30-6 at 39; see also id. at 43 (recounting, in "Reviewing Authority Comments," that – after "[Defendant Euote] gave his baton to [Defendant] Odedere" – "[Defendant] Odedere then strikes [Plaintiff] a total of 39 times across the hands and arms in 33 seconds" (bold font omitted)).)

20

"[W]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibl[y] conclude otherwise." Islar v. Hicks, No. 5:10CV28, 2012 WL 3955371, at *4 (W.D.N.C. Sept. 10, 2012) (unpublished) (internal brackets and quotation marks omitted). Given the record before the Court, a reasonable fact-finder could decide "from the evidence that Defendants [Euote and Crisco] both were aware of Defendant [Odedere's] use of force, were in the vicinity of Plaintiff and [Defendant Odedere], and were able to respond in some fashion . . . ." Id. "It is for the jury to determine the speed and length of the episode, and the reasonableness of [the conduct of Defendants Euote and Crisco]." Id.

Consistent with that conclusion, a neighboring court relatively recently rejected a recommendation of summary judgment in favor of prison officials on a prisoner's failure to intervene claim where the record evidence showed "that the alleged excessive force lasted only around 15 seconds in the cell and around a minute in the shower," Donohoue v. Lambert, No. 7:13CV397, 2015 WL 9582705, at *2 (W.D. Va. Dec. 31, 2015) (unpublished), explaining:

> The [recommendation] concludes from this timing factor alone that none of the bystander defendants had a reasonable opportunity to intervene to stop or prevent the excessive force. The court cannot adopt this conclusion. Rather, the court concludes that genuine, although close, issues of material fact remain as to

whether these officers had a reasonable opportunity to prevent harm to [the plaintiff] . . . during the cell extraction . . . . Similarly, the court concludes that genuine, although close, issues of material fact remain as to whether the[se ] officers had a reasonable opportunity to prevent harm to [the plaintiff] during his decontamination in the shower . . . . These factual disputes preclude summary judgment on the merits of the [failure-to-intervene] claim or on the ground of qualified immunity. Therefore, the court will deny summary judgment for these defendants.

Id. Or, as another court even more recently observed:

This is not a situation where the officers were faced with an instantaneous decision such that it would be improper, in hindsight, to question that decision. To the contrary, the facts [in the record] indicate that [they] had some 45 seconds in which to decide whether to [intervene] . . . . 45 seconds is a long time when [a prisoner] is being attacked . . . .

Smith v. Wheat, No. 2:21CV1859, 2022 WL 4029775, at *4 (E.D. Cal. Sept. 1, 2022) (unpublished) (internal quotation marks omitted); but see also Nazerzadeh v. Harris Cnty., Civ. No. H-08-499, 2010 WL 3817149, at *33 (S.D. Tex. Sept. 27, 2010) (unpublished) ("The summary judgment evidence shows that the alleged use of excessive force lasted less than one minute. Even assuming that other jailers witnessed the use of force against [the plaintiff], there is no basis to conclude that those jailers had a reasonable opportunity to assess the situation and intervene.").[11]

_____

11 Importantly, this Memorandum Opinion "does not suggest that [Defendants Euote and Crisco] should have physically involved [themselves], but only that there is evidence supporting a finding that there was an opportunity [for them] to tell [Defendant Odedere] to stop . . . and that [they] did not do so." Thomas v. Barze, 57 F. Supp. 3d 1040, 1074 (D. Minn. 2014); see also Miller
(continued...)

Under these circumstances, the Court should decline to enter summary judgment for Defendants Euote and Crisco on Plaintiff's claims against them for failing to intervene during Defendant Odedere's baton strikes.[12]

---

11(...continued)
v. Gonzalez, 761 F.3d 822, 826 (7th Cir. 2014) ("A realistic opportunity [to intervene] means a chance to warn the officer using the excessive force to stop." (internal quotation marks omitted)). Moreover, to the extent Defendants Euote and Crisco have requested summary judgment on the ground that they lacked "the authority[] to intervene when Defendant Odedere struck Plaintiff with the baton" (Docket Entry 30 at 10; see also Docket Entry 30-5 at 3 (identifying Defendant Odedere as "the Unit Manager"); Docket Entry 30-6 at 2-33 (memorializing Defendant Crisco's description of Defendant Odedere as "[Defendant Crisco's] supervisor," as well as Defendant Crisco's averment that, "[a]s a sergeant, [she] cannot override orders given by unit management")), the Court should conclude that "a corrections officer can not escape liability by relying upon his [or her] inferior or non-supervisory rank vis-a-vis the other officers," Smith v. Messenger, 293 F.3d 641, 650 (3d Cir. 2002); see also id. at 651 ("The duty to uphold the law does not turn upon an officer's rank. It is neither affected by, nor proportional to, a non-intervening officer's relationship to an offending colleague.").

12 Although Moving Defendants' supporting memorandum contends that "Defendants [] Euote[] and Crisco are entitled to [q]ualified [i]mmunity" (Docket Entry 30 at 10 (underscoring omitted)), that contention rests solely on the further contention that "[q]ualified immunity shields the[m] . . ., as the[y] . . . did not violate any of Plaintiff's constitutional rights" (id. at 11). For reasons detailed above, a material factual dispute exists as to whether Defendant Odedere's baton strikes continued for sufficient time to afford Defendants Euote and Crisco a chance to intervene. Moving Defendants' qualified immunity argument thus does not warrant entry of summary judgment for Defendants Euote and Crisco on the claims against them for failing to intervene during that use of force. See, e.g., Browning v. Snead, 886 F. Supp. 547, 552 (S.D.W. Va. 1995) ("[The d]efendants next argue [the o]fficer [sued based on a theory of bystander liability] is entitled to qualified immunity because he . . . had no opportunity to intervene on [the p]laintiff's behalf. . . . [The p]laintiff has adduced deposition (continued...)

23

Lastly, Moving Defendants have argued in conclusory fashion that Plaintiff "has provided nothing to show any 'evil intent' or 'callous indifference' to his rights. As a result, Plaintiff's claims . . . for punitive damages must be dismissed." (Docket Entry 30 at 11 (quoting <u>Cooper v. Dyke</u>, 814 F.2d 941, 948 (4th Cir. 1987)).) Plaintiff has responded that (A) "Defendant Euote's choice of force – a metal food [tray passage] trap [door]" (Docket Entry 33 at 14) and his "repeated striking of Plaintiff with [it]" (<u>id.</u>) would allow a reasonable fact-finder to award punitive damages because such conduct "shows a malicious and sadist [sic] mind-state or motive" (<u>id.</u> at 15), and (B) "Defendant Crisco was a liable bystander to Defendant Odedere's use of force" (<u>id.</u>) and "[t]o witness such a use of force and not intervene shows a callous indifference" (<u>id.</u>) for which "[p]unitive damages can be recovered" (<u>id.</u>). As noted in the Introduction, Moving Defendants did not file a reply and thus they "d[id] not develop any argument showing that punitive damages would be inappropriate if a fact-finder accepted Plaintiff's account [about these matters], as the Court must do at the summary judgment stage," <u>Honeycutt v. City of Rockingham</u>, No. 1:09CV912, 2012 WL 848123, at *13 (M.D.N.C. Mar. 13, 2012) (unpublished), <u>recommendation adopted</u>, slip op. (M.D.N.C.

---

12(...continued)
testimony to the effect [the o]fficer [in question] watched the incident [in which another officer used excessive force] and did nothing to prevent it. Clearly, this issue presents a question of material fact precluding summary judgment.").

Apr. 26, 2012) (Beaty, J.), <u>appeal dismissed</u>, No. 12-1638 (4th Cir. Dec. 18, 2012) (unpublished).

"Given the existence of a factual dispute regarding the[se] events . . ., the Court should not attempt to determine, as a matter of law, whether [Defendants Euote's and Crisco's] actions involved [at a minimum] . . . callous indifference to Plaintiff's constitutional rights . . . . Accordingly, no grounds exist to award summary judgment to Defendants [Euote and Crisco] on Plaintiff's request for punitive damages." <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>Estridge v. Weldon</u>, No. 00-6523, 232 F.3d 887 (table), 2000 WL 1587622, at *1 (4th Cir. Oct. 25, 2000) (unpublished) ("[T]he district court concluded that (a) the [d]efendants behaved reasonably; (b) [the plaintiff's] injuries were de minimis; (c) the [d]efendants were entitled to qualified immunity; and (d) [the plaintiff] was not entitled to punitive damages. Because genuine issues of material fact preclude summary judgment, we vacate the [district] court's order as to these conclusions. We remand to the district court . . . to determine whether [prison] guards inflicted cruel and unusual punishment and, if so, what damages are appropriate." (internal citation omitted)).

## CONCLUSION

Defendant Parker has established entitlement to judgment as a matter of law on Plaintiff's excessive force claim premised on Defendant Parker's discharge of pepper spray. That conclusion also

dooms Plaintiff's related claim against Defendant Euote for failing to intervene when Defendant Parker discharged pepper spray. All of Plaintiff's other claims (and his request for punitive damages in connection with those claims) should proceed to trial.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 29) be granted in part and denied in part as follows: the Court should enter summary judgment for Defendant Parker on the lone (excessive force) claim against him and for Defendant Euote on Plaintiff's claim for failure to intervene during Defendant Parker's use of force, but the Court should deny summary judgment for Defendants Euote and Crisco on the other claims against them.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 22, 2024